13 N.J. Super. 410 (1951)
80 A.2d 487
EX PARTE WILLIAM SAMBER.
Superior Court of New Jersey, Essex County Court Law Division.
Decided April 24, 1951.
*411 Mr. Robert A. Huebner, attorney for petitioner.
Mr. Maurice J. McKeown, attorney for the State.
HARTSHORNE, J.C.C.
Defendant claims he is in State Prison under an illegal sentence. He petitions under the rule permitting the court to "correct an illegal sentence at any time." Rule 2:7-13. The court assigned counsel, and heard the cause on the record as agreed on by both the prosecutor and defense counsel, the testimony of the judges who imposed the sentences in question being unavailable by death and otherwise.
In brief, the facts are that on December 17, 1928, for five offenses of breaking, entering, larceny and receiving, defendant was sentenced on the first offense to Rahway Reformatory, while on the four others he was sentenced to seven years in State Prison, consecutively, on each, the operation of such sentences being suspended.
On October 14, 1930, defendant was again sentenced on five allegations as follows:

"Accusation Year Defendant Court Crime
34064 Sept. 1930 William Samber SS BEL&R
34065 Sept. 1930 William Samber SS B&L
34066 Sept. 1930 William Samber SS BEL&R
34067 Sept. 1930 William Samber SS LR&Driv.
34068 Sept. 1930 William Samber SS BEL&R
 Disposition: Sentence suspended on the above named defendants
 and upon the above stated convictions and the said defendants
 discharged."

*412 At the same time the court revoked the operation of the above suspended sentences, entered December 17, 1928, and committed defendant to State Prison therefor.
On April 8, 1936, defendant came on a third occasion before the court for the offense of breaking, entering, larceny and receiving, on indictment 319, and was sentenced to State Prison for from five to seven years. At the same time the court revoked the suspensions of the sentences imposed, as above, on October 14, 1930, and sentenced the defendant on such accusations (number 34064, 34065, 34066, and 34068) for from five to seven years consecutively on each, after the service of the sentence on indictment 319.
Defendant was paroled April 9, 1946, while still serving these sentences. While on parole he committed another similar crime and was sentenced December 10, 1947, to serve a sentence in State Prison of from two to three years. The commission of this crime automatically violated his parole. Because of such parole violation at the present time defendant is serving the sentences imposed April 8, 1936, as above, (number 34064, 34065, 34066, and 34068) on which sentence had been suspended on October 14, 1930.
Such being the facts, defense counsel argues that the sentences now being served by defendant are illegal for two reasons: (1) because on the day they were imposed, October 14, 1930, they were nullified, by the entry in the record as to each of them, "Sentence suspended on the above named defendants and upon the above stated conviction and the said defendants discharged"; the claim being that this discharge meant a discharge completely from the offense itself, and not a discharge merely from the custody of the court; (2) that the revocation of the suspension of these same sentences could not lawfully occur on April 8, 1936, after the lapse of five and a half years from the time of the suspension of such sentences to State Prison for seven years, the specific point being that the lapse of time was unreasonable.
Clearly the questions involved here are as to the legal effect of a suspension of sentence. It is settled law that *413 our courts have inherent power to suspend sentences and for a reasonable length of time. "The weight of authority and our courts recognize the inherent power of the courts to suspend sentences temporarily or for a reasonable length of time. State v. Osborne, 79 N.J. Eq. 430 (Ch. 1911); State v. Bongiorno, 96 N.J.L. 318 (Sup. Ct. 1921)." In re Baer, 140 N.J. Eq. 571, 573 (E. & A. 1947). The purpose of suspending sentence is obviously not only one of mercy toward the offender, but also to aid both him and the public, by inspiring him to refrain from the commission of further crime, through hanging a "Sword of Damocles" over his head.
That this purpose is beneficent both to the defendant and the public is obvious. That this beneficent purpose would be nullified by discharging the defendant completely from under this "Sword of Damocles" is equally clear. That the same court would effectuate this beneficent purpose, and in the same breath nullify this purpose, is a conclusion not lightly to be indulged. Particularly is this so if the action of the court is reasonably explicable otherwise. Slight consideration will indicate this reasonable intention otherwise.
When the court put into operation, on October 14, 1930, the sentences suspended on December 17, 1928, of a series of commitments to State Prison for seven years, it was the obvious intention of the court to have the defendant discharged from custody in the Essex County Court House, and committed to custody at State Prison in Trenton. But since defendant was then in the custody of the Essex County sheriff for the Essex County Court, the sheriff would have no right to turn him over to the State Prison authorities without an order of the court that he be discharged from the custody of the sentencing court. Such was the necessary order of the court, the only way in which the full sentence of the court could actually be served, and hence the reasonable construction to be put upon the word "discharge," in such sentence. Indeed, it is the unvarying practice of the Essex County Court to enter orders to exactly that effect under all such circumstances, of practically weekly occurrence, the mimeographed *414 forms maintained by the clerks to that effect having been duly produced before this court at the above hearing.
The first point argued for defendant is thus seen to be groundless.
The other objection argued by defense counsel to the sentences now being served by defendant is that the suspension of such sentences for five and a half years was so unreasonable as to render them invalid when imposed. Here we revert to the settled rule in New Jersey, and by the weight of authority throughout the country, as to "the inherent power of the courts to suspend sentences temporarily or for a reasonable length of time." As above set forth, this suspension of sentence of itself accords with sound public policy, a policy beneficent both to the prisoner and to the public. When such suspension substantially accords with this policy, it would appear valid. If this be the case, the time of the suspension must be clearly unreasonable in order to invalidate the imposition of the sentence thereafter.
Looking at the matter in another aspect, it is clear that the defendant cannot wipe out a sentence without performing it. Thus, if he does not wish to have it continue to hang over his head, he should ask to have it imposed. If he asked to have it imposed, it would be, and it would then continue for its expressed term, and from the time of its imposition. It is thus clear, regardless of its beneficence, that the suspension of the sentence can continue at least for the period stated in the sentence itself, in the absence of a request by defendant that it be promptly imposed, which defendant did not request here.
Furthermore, because of the beneficial effect of the suspension of sentence upon both the prisoner and the public, it would appear reasonable to have this beneficial effect continue, at least for the period of time which the Legislature deems appropriate for a sentence to custody for such crime. It surely accords with public policy, and the inherent power of the courts in this regard to that end, for a convicted defendant to be deterred from committing a further crime, by the possible *415 imposition of a suspended sentence, for the same period that he could be sentenced to custody for the commission of that very crime.
Indeed, both our courts and the weight of authority throughout the country have already gone not this far, but further. For, our highest court has already held, where a one-year sentence was suspended on a charge of conspiracy, a crime for which a sentence of three years could be imposed, that this suspension could be revoked, and the prisoner committed to custody thereunder, "three years and four months after the original sentence." In re Baer, supra; 26 A.L.R. 393, note; 101 A.L.R. 1402, note. Our highest court has thus upheld a suspension of sentence for a period greater than the term stated in the sentence itself, and greater than the term of the maximum penalty for the crime itself.
Indeed, as indicated in the last above note, an utterly indefinite suspension of a sentence is valid when imposed under a statute to that effect, and in various of the decisions there noted such statutes are held to be but expressions of the inherent power of the courts themselves. However, in the case at bar it is not necessary to go that far, or even to apply the rule to the extent it was approved by our highest court in the Baer case, supra. For here the sentences in question were suspended for a period not greater, but less than, that of the maximum of the term stated in the sentence itself, as well as less than that of the maximum penalty for the crime itself. The suspension here was for but five and a half years, while both the sentence imposed and the maximum penalty for the crime were seven years.
Since such suspension and the imposition of the sentences thereafter are valid, prisoner's petition is denied.