87 N.J. Super. 571 (1965)
210 A.2d 236
STATE OF NEW JERSEY, PLAINTIFF,
v.
RAYFIELD MILES, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 13, 1965.
*573 Mr. Peter Murray, assigned counsel, for defendant.
Mr. John G. Graham, Assistant County Prosecutor, for plaintiff (Mr. Brendan T. Byrne, Prosecutor of Essex County).
GIULIANO, J.S.C.
On June 19, 1957 petitioner Rayfield Miles was charged in count I of indictment 1996-56 with the crime of sodomy, in violation of N.J.S. 2A:143-1, and on count II with assault with intent to commit sodomy, in violation of N.J.S. 2A:90-2. On July 1, 1957 he entered a plea of non vult to count I and of not guilty to count II.
*574 On August 15, 1957 the New Jersey State Diagnostic Center, after examination, study and evaluation, found that petitioner came within the purview of the Sex Offender Act and recommended to the court that he be committed to the New Jersey State Hospital. Subsequently, on September 11, 1957, this court, pursuant to N.J.S. 2A:164-3 et seq., committed the petitioner to the New Jersey State Hospital at Trenton.
On October 25, 1957 the second count of the indictment was dismissed on motion of the prosecutor.
Petitioner was thereafter received at the New Jersey State Hospital in Trenton and remained there until October 19, 1960, when he was transferred to the New Jersey State Prison to complete a maximum term as prescribed by law. He is presently confined at that institution.
On December 29, 1964 petitioner filed a petition for post-conviction relief under R.R. 3:10A. Subsequently, an amended petition for post-conviction relief was filed by petitioner through his court-assigned attorney. In these petitions for relief, petitioner asserts the following grounds:
1. The original sentence was illegal because he did not come within the provisions of the Sex Offender Act.
2. His incarceration as a sex offender in the New Jersey State Prison is a violation of his constitutional rights of equal protection of the laws and due process.
3. His transfer from the State Hospital to State Prison was unlawful.

I.
Petitioner's first contention raises several unique questions. He asserts that his original sentence as a sex offender in 1957 was illegal because he did not come within the purview of the Sex Offender Act. Petitioner relies on State v. Wingler, 25 N.J. 161 (1957), where our Supreme Court held that the term "adult aggressor," as used in the section of the Sex Offender Act dealing with the specialized treatment of a sex offender if it appears that the victim was under the age of 15 *575 and the offender is an adult aggressor, refers to a person of at least 21 years of age.
Petitioner was born on April 5, 1938. At the time he committed the act of sodomy in 1957 he was 19 years old. State v. Wingler, supra, was decided on October 21, 1957. Petitioner asserts that (a) Wingler must be applied retroactively in view of the interpretation of "adult aggressor"; (b) none of the other sections of the Sex Offender Act is applicable to him, and (c) he must be resentenced to a minimum and maximum term because his sentence was illegal.
In Wingler the court reviewed the history of state statutes regulating sex offenders. In June 1950 N.J.S. 2A:164-3 et seq. was passed, which provided for the treatment of persons convicted of designated sex offenses where it is found that their conduct was characterized by "a. A pattern of repetitive, compulsive behavior; and b. Either violence; or c. An age disparity from which it shall appear that the victim was under the age of 15 years and the offender is an adult aggressor; * * *." N.J.S. 2A:164-5.
Following the Wingler decision, N.J.S. 2A:164-5 was amended, effective on January 12, 1959 to provide:
"If it shall appear from said report that it has been determined through clinical findings that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior; and, except in convictions for open lewdness or indecent exposure, if either violence was utilized in the commission of the offense; or the victim was under the age of 15 years; it shall be the duty of the court, upon recommendation of the Diagnostic Center, to submit the offender to a program of specialized treatment for his mental and physical aberrations."
It was the Wingler decision that prompted the Legislature to pass the 1959 amendment. Attached to the proposed bill was this statement:
"The Supreme Court of New Jersey in a recent decision in State vs. Wingler, 25 N.J. 161, had occasion to examine N.J.S. 2A:164-5, the subject of this amendment, and reached the conclusion that the term `adult aggressor' means an individual who has attained the age of 21 years. Since juvenile offenders under the age of 16 must be handled in juvenile court for all offenses and are deemed incapable of *576 committing crime the Sex Offender Law does not apply to them. The decision thus finds that the Sex Offender Law as presently written does not apply to the category of offenders (other than juveniles) between the age of 16 and 21 unless `violence' attends the crime.
Experience indicates that there are a considerable number of offenders beyond the age of 16 and who have not yet reached 21 who commit crimes without `violence' that demonstrate mental abnormality requiring special treatment under the Sex Offender Law. This amendment is designed to include this age group of 16 to 21 within the statute, because no logical reason exists for their exclusion. If enacted this bill would make the Sex Offender Law applicable to all age groups in New Jersey."
The first question is whether the Wingler interpretation of "adult aggressor" retroactively affects petitioner's commitment, since Wingler was decided approximately one month after the petitioner was committed to the New Jersey State Hospital as a sex offender.
The Wingler decision, in interpreting "adult aggressor," disclosed the intention of the Legislature at the time of the passage of the Sex Offender Act in 1950, several years before the petitioner was sentenced. Thus, Wingler must be applied retroactively to all nonadult offenders sentenced under the 1950 act under N.J.S. 2A:164-5(a) and (c) (where there was a pattern of repetitive, compulsive behavior, and age disparity).
The State contends that if the petitioner is to be resentenced, the 1959 amendment would apply to him and thereby automatically correct an illegal sentence. In other words, the State argues that the 1959 amendment should be applied retroactively because the Legislature by the amendment indicated that offenders over the age of 16 and under the age of 21 should be treated as adults under the Sex Offender Act. The State also argues that for purposes of sentencing, the Sex Offender Act looks at an offender's age at the time he is sentenced. Since the petitioner would be over the age of 21 when he is resentenced, he would be an "adult aggressor" under the provisions of the Sex Offender Act.
The court finds no merit in the State's contention. To apply the 1959 amendment retroactively would contravene *577 the Legislature's intent. Grave constitutional questions would arise if the court concluded that the Legislature's intent in 1959 was to correct retroactively the sentences of persons in petitioner's status. The court finds that petitioner was not an "adult aggressor" under the provisions of the Sex Offender Act at the time of the offense.
Petitioner next asserts that since he was not an "adult aggressor" at the time he committed the act of sodomy in 1957, he was not a sex offender because the Diagnostic Center report of July 29, 1957 does not indicate through clinical findings that his conduct during the commission of the crime was characterized by "violence."
Petitioner in support of his position refers to the last paragraph of such report which states:

"STAFF REVIEW:
A study of the examination of this nineteen year old negro male indicates that we are dealing with a moderately severe mental defective. This is the second time that he has been found guilty of the offense of Sodomy and these two offenses have involved boys, ages five and seven. It was quite apparent that he comes under the provisions of the State Sex Offenders Act and his commitment to an institution for supervision, guidance and possible treatment is indicated."
Petitioner contends that although the staff review and conclusion of the Diagnostic Center called for treatment of petitioner as one who came within the purview of the act, the recommendation was based upon provisions (a) and (c) of N.J.S. 2A:164-5 of the then existing act (i.e. repetitive, compulsive behavior and an age disparity where the victim was under 15 years of age and the offender was the adult aggressor). Petitioner asserts that while the Diagnostic Center report might be interpreted to include within it a prediction of violent behavior in the future, there is no indication whatsoever of violence attendant upon the act for which petitioner was examined.
At oral argument the State conceded that the original sentence imposed in 1957, based upon petitioner's status as an "adult aggressor," was illegal, but asserted that his criminal *578 conduct was characterized by violence. A transcript of the proceedings at oral argument discloses:
"MR. GRAHAM: There was violence committed and he pleaded non vult to (an attempt to commit)[1] sodomy, but in showing violence for purposes of treatment we would not be foreclosed from showing that in fact an actual act of sodomy was committed because we are now talking about sentencing and whether the act committed was violent or not. As I said, I am not sure we could produce the victim, but we would produce the man's confession which I think could clearly show an act of violence.

* * * * * * * *
THE COURT: If I agree with you as to your latter argument, then there is no need of re-sentencing, if I make a finding based upon the diagnostic report and the statute as it presently provides.
MR. GRAHAM: That's right, Your Honor.
THE COURT: But if I agree with you as to the first argument, then I have to set aside the sentence. I have to then hold a hearing and the State, you say, would be permitted to offer testimony to indicate that there was violence.
MR. GRAHAM: That's right.
THE COURT: After I conclude that there was violence, you then want me to send the defendant petitioner here back to Menlo Park with my findings. He should then be given an examination and the Diagnostic Center should make an evaluation of it and make a recommendation.
MR. GRAHAM: Yes, sir, and if we fail to show violence, I think at the re-sentencing Your Honor could consider either of the two ways that would show the age disparity. I think this man would then be treated as a sex offender in any of the three ways."
Thus, the State argues it should be given the opportunity to establish that petitioner's conduct at the time of the commission of the offense was characterized by violence.
After oral argument the State submitted a supplemental brief in which it now asserts that the proper procedure to follow was outlined in State v. Wingler, supra. The court there said:
"In the instant matter the defendant was not an adult aggressor and could not legally be brought within L. 1950, c. 207, unless his conduct was characterized by violence. The record of the trial which resulted *579 in the defendant's convictions on March 17, 1952 has not been brought to our attention and the briefs and appendices submitted by the parties do not enlighten us on the matter. Accordingly, we find it necessary to remand the cause for further hearing and determination in the Monmouth County Court. If the County Court finds that the statutory requirements embodied in L. 1950, c. 207, § 3, were substantially fulfilled, then the defendant should be remanded to the Department of Institutions and Agencies for continued detention and treatment under the Sex Offender Act. If, however, the court finds that the statutory requirements were not met, then the defendant should be re-sentenced on his criminal conviction in accordance with law. N.J.S. 2A:164-9. See N.J.S. 2A:138-1; N.J.S. 2A:115-1; N.J.S. 2A:96-3; N.J.S. 2A:85-5; N.J.S. 2A:85-7. Cf. State v. Flood, 32 N.J. Super. 161 (App. Div. 1954). During the hearing in the County Court the record of the criminal trial as well as the report from the Diagnostic Center may formally be received, along with any other materials which may bear on the issues before the Court. See In re Mundy, 97 N.H. 239, 85 A.2d 371 (1952); cf. Barber v. Hochstrasser, 136 N.J.L. 76, 81 (Sup. Ct. 1947); N.J.S. 2A:82-34 et seq." (25 N.J., at p. 180)
In Wingler the court found that defendant, who was under the age of 21, was not an adult aggressor and did not legally come within the provisions of the Sex Offender Act unless his conduct was characterized by violence. The court remanded the cause for further hearing and determination as to the issue of violence. The trial record was not before the court, and the briefs and appendices submitted by the parties were not enlightening. On remand, it was consented by the State that Wingler should be resentenced to a minimum and maximum term. No evidence of violence was offered by the State.
The State contends that the same situation exists in the case at bar as in Wingler. The Diagnostic Center report here discloses a pattern of "repetitive, compulsive behavior," and under the law as it then existed the age disparity was not present; therefore, the State should be permitted the opportunity to prove that "violence" accompanied petitioner's criminal act. The State submits that while in Wingler a trial transcript was available, in this case a transcript disclosing the details of the crime is not available because of petitioner's plea.
*580 To recapitulate, petitioner's position is that (a) his commitment was based upon N.J.S. 2A:164-5, which provides that the requisite factors for inclusion of an accused within the purview of its provisions shall appear from the Diagnostic Center's report. Such report does not indicate that "violence" accompanied petitioner's conduct so as to permit a finding that he came within the purview of the Sex Offender Act; and (b) an independent determination by the court as to the finding of violence is improper.
The State's position is that the sentence of petitioner was illegal because of Wingler's interpretation of "adult aggressor"; however, the State argues it will be able to establish at a hearing that violence did accompany petitioner's criminal act, and therefore he came within the purview of the Sex Offender Act and should continue under the care and treatment of the Department of Institutions and Agencies.
N.J.S. 2A:164-5 provides that if it shall appear from the Diagnostic Center's report that it has been determined through clinical findings that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior and violence, the court, upon recommendation of the Diagnostic Center, shall submit the offender to a program of specialized treatment.
The report of Dr. Archie Sofman of the Diagnostic Center sets forth the following:
"The subject was arrested in April 1957 and at that time was on parole from Annandale. It is alleged that while in an elevator, that he assaulted a seven year old boy and attempted to perform sodomy on this boy. He was apprehended when attempting to leave the building and he readily admitted his offense. The subject was previously examined at the Diagnostic Center in July of 1955, while he was an inmate at Annandale. He was committed to that institution for the offense of sodomy on a five year old boy. At that time the Diagnostic Center examination concluded that the subject was a mental defective. * * *

PSYCHIATRIC STUDY
At the time of examination the subject cooperated in a rather superficial manner. He is a tall slender individual who obviously was rather dull emotionally and intellectually. A ptosis of the right eyelid was most obvious. His answers to questions were relevant and coherent *581 all given in brief monosyllables and he offered hardly anything at all spontaneously. The impression was gained that we are dealing with a mental defective, who most obviously was a moron. His emotional responses were quite shallow but his affect was considered to be appropriate. No symptoms of a psychotic nature could be elicited or observed.
The subject readily admitted that he was here for examination because of the offense of sodomy which caused him to be examined here previously while he was at Annandale. He states that on April 23, 1957, he saw a seven year old boy in an elevator and he states that he pulled this boy's pants down and layed on top of him. The boy hollered and the subject let the boy go. The subject readily admits that he was going to commit the offense of Sodomy and could not offer any adequate explanation for his behavior. He admitted that this is the second time he has attempted this offense and he claims that he was caught both times. He readily admits that the first offense was also with a small boy. He states that he was at Annandale for thirteen months and did quite well there and was released on parole in June of 1956. He expresses no evidence of feelings of shame and guilt or remorse for his behavior.
Further discussion with the subject reveals that he apparently has suffered much emotional deprivation and that he is obviously handicapped physically, intellectually and socially. No doubt he is an out-of-wedlock child and he had a strabismus of the right eye as well as a ptosis of the right eye lid. His progress in school was less than satisfactory and he has no real record of an adequate employment history. In 1954, he appeared in the Essex County Juvenile Court for being incorrigible and was placed on probation, receiving a suspended sentence to Jamesburg. He later violated probation by the offense of Sodomy and was committed to Annandale where he served thirteen months. Since his release from that institution in June 1956 he has done some part-time work but has had no real jobs. He has lived with the woman whom he describes as his mother and her boy friend. He states that he has spent his time playing with boys on the play ground and has not been with any girls.
The subject claims that he had his first heterosexual experience at the age of fourteen or fifteen and has indulged in this on three or four occasions. He claims that he liked it but he readily admits that he never got along well with the girls. He admits occacional masturbatory practices but shows no evidence of any feelings of guilt. He claims only two homosexual contacts for which he was apprehended and convicted. He emphatically denies any homosexual experiences at Annandale. Since his release from Annandale he has had no sexual experiences at all according to him.
It is quite obvious that we are dealing with an extremely inadequate personality. Emotionally he is quite immature and it is obvious that he is handicapped intellectually. He has suffered from much emotional deprivation and the subject states that he bites his nails and still wets his bed. His emotional responses on the whole were quite *582 dull. No evidence of any definite psychotic symptomatology could be uncovered or elicited. His weak ego-structure is most obvious. He has no insight into his problems and his judgment is apparently most defective. He appears to be quite capable of impulsive and assaultive behavior and his inhibitory controls are poor. He is considered to be suffering from a moderate degree of mental deficiency." (Emphasis added)
After a psychological examination, psychiatric study and review of the crime, the Diagnostic Center concluded:
"A study of the examination of this nineteen year old negro male indicates that we are dealing with a moderately severe mental defective. This is the second time that he has been found guilty of the offense of Sodomy and these two offenses have involved boys, ages five and seven. It was quite apparent that he comes under the provisions of the State Sex Offenders Act. * * *" (Emphasis added)
The court notes that the staff review and recommendation of the Diagnostic Center report does not specifically refer to sections (a) and (b), or (a) and (c) of N.J.S. 2A:164-5. Although there is no direct reference to clinical findings of age disparity or violence, the report clearly indicates that it was "quite apparent" petitioner came under "the provisions of the State Sex Offender Act."
Violence is a relative term. No particular degree of force is required to constitute violence. Violence has been held to include any application of force even though it entails no pain or bodily harm and leaves no mark. See Falconiero v. Maryland Cas. Co., 59 N.J. Super. 105 (Cam. Cty. Dist. Ct. 1960). Violence is also broadly defined in Webster's New International Dictionary (2d ed.) as "the exertion of any physical force considered with reference to its effect on another than the agent." Falconiero, supra, at p. 109.
The Diagnostic Center report indicates that petitioner pulled the infant's pants down and layed on top of him, the boy hollered, petitioner readily admitted the offense, and petitioner is quite capable of impulsive and assaultive behavior. It appears from the Diagnostic Center report that petitioner's conduct was characterized by violence.
*583 The Supreme Court in Wingler held that the trial court in an application such as this may consider the record of the trial, Diagnostic Center report, and "any other materials which may bear on the issues before the Court."
The record before the court discloses that on April 23, 1957, the victim, a seven-year-old infant, was playing outside the Rev. Hayes Housing Project at 60 Boyd Street, Newark, New Jersey. Petitioner asked the infant to show him where the twelfth floor of the building was located. The two then continued to the twelfth floor in an elevator where petitioner ordered the infant to remove his pants. The infant began to scream; petitioner then put his hands over the infant's mouth and threatened him. The infant's pants were removed and petitioner then proceeded to commit the act of sodomy. Petitioner fled when he heard footsteps, but was apprehended shortly thereafter.
In reviewing the details of the crime the court concludes that the entire criminal act permeated an atmosphere of fear and terror in the infant victim. Trapped with a "mental defective," the infant was over-powered forcibly by his assailant.
The court having considered the indictment, petitioner's plea of non vult, the circumstances attending the criminal act, the Diagnostic Center report of July 29, 1957, petitioner's original petition, his briefs and supplemental memoranda, the State's briefs and supplemental memoranda, and the transcript of proceedings at oral argument, finds that petitioner's conduct during the commission of the crime of sodomy was characterized by violence.
The court further finds that under N.J.S. 2A:164-5 it appears from the Diagnostic Center report that it has been determined through clinical findings that petitioner's conduct was characterized by a pattern of repetitive, compulsive behavior and violence; therefore, a hearing on the issue of violence is not necessary.
In conclusion, this court finds that (a) Wingler's interpretation of "adult aggressor" should apply retroactively, and, therefore, petitioner was not an adult aggressor when he committed *584 the act of sodomy in 1957; (b) petitioner's act was characterized by violence; (c) a future hearing is not necessary on the issue of violence; (d) petitioner did come within the purview of the Sex Offender Act, N.J.S. 2A:164-5, under sections (a) and (b); and (e) petitioner's confinement as a sex offender is not illegal.

II.
Petitioner's second contention is that he should be resentenced to a minimum and maximum term. Petitioner attacks the Sex Offender Act, N.J.S. 2A:164-3 et seq., dealing with sentencing as unconstitutional because it denies a defendant equal protection of the law. This same argument was advanced in State v. Wingler, 25 N.J. 161 (1957). Our Supreme Court there stated:
"* * * However, this ignores the fact that the Legislature has, with sufficient cause, classified certain repetitive, compulsive sex offenders as falling within a separate group urgently requiring, for the protection of society as well as the offenders themselves, special confinement and treatment until they are capable of making acceptable social adjustments, but in no event beyond the maximum term fixed by law. The constitutional power of the Legislature to make reasonable classifications of criminals for purposes of sentence and release is beyond question." (at p. 175)
The Supreme Court held that the Sex Offender Act is not unconstitutional on the theory that it denies a defendant equal protection of laws, stating:
"The statutory standard is legally adequate and the classification has a rational basis. Those within the class are not subjected to any improper discriminations. They are given special beneficial treatment designed to advance their interests as well as those of society. It is true that despite all available medical and psychiatric facilities and conscientious semi-annual statutory reviews (N.J.S. 2A:164-8), some of the offenders may be confined for maximum terms because they remain incapable of making an acceptable adjustment in the community. But that fact does not impair the constitutionality of the general legislation * * *.
*585 We have no hesitancy in rejecting the claim of unconstitutionality * * *." (at p. 176)
This contention is without merit.

III.
Petitioner's final contention is that his transfer from the State Hospital to the State Prison is unlawful and unhuman and because he has recovered his sanity he is entitled to be released or paroled.
Counsel for petitioner urges that this court should reevaluate State v. Wingler, supra, and State v. Newton, 17 N.J. 271 (1955), and argues that it is an abuse of petitioner's constitutional right for an administrative officer to remove petitioner from an atmosphere of care and treatment and place him in an institution primarily designed for the custody and punishment of those sentenced for crimes. He further asserts that since the legislation regarding sex offenders is wholly devoid of punitive aspects, the spirit of the statutory rehabilitative purposes cannot be subverted for administrative convenience because the climate and association of the New Jersey State Prison are wholly alien to the purpose of the sex offender legislation.
Although counsel raises several interesting questions as to the present incarceration of the petitioner, this court is bound by the holding of our Supreme Court in State v. Wingler, supra.
The proper procedure for raising these issues is by way of an action instituted in the Superior Court, Appellate Division, under R.R. 4:88-8 or 4:88-10 (review of the validity of any administrative rule promulgated by any state administrative agency by declaratory judgment proceedings in the Appellate Division).
R.R. 4:88-8 provides:
"(a) Review of the final decision or action of any state administrative agency, other than those governed by Rules 5:2-5 and 5:2-9, shall *586 be by appeal to the Appellate Division. Such appeal shall be instituted by filing a notice of appeal with the Appellate Division together with an affidavit or acknowledgment of service of copies of the notice of appeal upon the agency, the Attorney General or upon any person in his office designated by him in a writing filed with the clerk of the superior court and all other parties to the proceeding or their attorneys. * * *"
In State v. Newton, supra, the Supreme Court held that the Commissioner of Institutions and Agencies has the authority under the Sex Offender Act to transfer to the State Prison at Trenton a convicted sex offender. The Supreme Court in Wingler held that this statutory transfer vested in the Commissioner is highly discretionary and courts will not ordinarily interfere with its exercise. See also Tully v. Tramburg, 57 N.J. Super. 377 (App. Div. 1959).
The petitioner's final contention is without merit and the application for post-conviction relief is denied.
An appropriate order may be submitted in accordance with this opinion.
NOTES
[1] Petitioner pleaded non vult to the crime of sodomy, as charged in count I of Indictment No. 1996-56.