894 A.2d 60

STATE OF NEW JERSEY IN THE INTEREST
OF M.C., JUVENILE–RESPONDENT.

STATE OF NEW JERSEY IN THE INTEREST
OF M.P., JUVENILE–RESPONDENT.

STATE OF NEW JERSEY IN THE INTEREST
OF S.J., JUVENILE–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 27, 2006—Decided March 20, 2006.

Before Judges LINTNER, PARRILLO and HOLSTON, JR.

*Luis A. Valentin,* Monmouth County Prosecutor, attorney for appellant, State of New Jersey (*Andrew S. Fried,* Assistant Prosecutor, of counsel and on the briefs).

*Yvonne Smith Segars,* Public Defender, attorney for respondents (*Lon Taylor,* Assistant Deputy Public Defender, of counsel and on the briefs).

The opinion of the court was delivered by

LINTNER, J.A.D.

In these appeals, consolidated for the purpose of this opinion, a Family Court judge imposed suspended sentences in three separate, unrelated juvenile cases involving defendants M.C., M.P., and S.J. The State contends that the sentences imposed are illegal. The limited issue for us to determine is whether the Code of Juvenile Justice, *N.J.S.A.* 2A:4A–20 to –91 (the Code), should be interpreted to permit suspended sentences. The Code is silent on the subject of suspended sentences. Nevertheless, we conclude that its provisions are sufficiently flexible to permit our courts to impose suspended sentences as a viable disposition, given its fundamental rehabilitative and penal objectives.

The underlying facts are undisputed. Each of the juveniles involved pled guilty pursuant to negotiated plea agreements. On March 16, 2004, M.C. pled guilty to acts which, if committed by an adult, would constitute third-degree distribution of cocaine, *N.J.S.A.* 2C:35–5, and disorderly persons possession of marijuana under fifty grams, *N.J.S.A.* 2C:35–10a(4).[1] M.C. was sentenced to

---

[1] The remaining charges of acts which, if committed by an adult, would constitute possession of cocaine and possession of cocaine with intent to distribute, were dismissed.

time served and loss of his driver's license for six months for possession of marijuana. On the plea to distribution of cocaine, a one-year suspended custodial sentence was imposed with a two-year period of probation.

On April 12, 2004, M.P. pled guilty to acts which, if committed by an adult, would constitute third-degree distribution of heroin within 1000 feet from a school.[2] A two-year suspended custodial sentence was imposed with two years of probation. M.P.'s right to obtain a driver's license was also suspended for six months. Three days later, S.J. pled guilty to charges in four separate complaints. Those charges included acts which, if committed by an adult, would constitute three separate disorderly persons simple assaults, *N.J.S.A.* 2C:12–1a,[3] fourth-degree criminal trespass, *N.J.S.A.* 2C:18–3a, and third-degree theft, *N.J.S.A.* 2C:20–3. S.J. received a two-year suspended sentence, as well as a two-year period of probation.

The State moved to vacate the suspended sentences as illegal. Rejecting the juveniles' contention that double jeopardy prevented him from deciding the issue, the judge treated the State's application as a motion for reconsideration and denied the motion.

On appeal, the State contends that the omission of a provision permitting suspended dispositional incarceration in *N.J.S.A.* 2A:4A–43b(1) to -(20), which it asserts provides "an exhaustive list of 20 dispositions," renders a suspended term of incarceration "not authorized" and "illegal" under the Code. Defendants counter, arguing in part that the mere omission of suspended sentences as a disposition does not "automatically" signal an intention on the

---

[2] The remaining charges which, if committed by an adult, would constitute possession of heroin, possession with intent to distribute, and resisting arrest were dismissed.

[3] In one of the four complaints, FJ–13–2840–04, S.J.'s plea was to the lesser-included offense of simple assault, rather than the initial charges of acts, if committed by an adult, would constitute aggravated assault *N.J.S.A.* 2C:12–1b, and conspiracy to commit aggravated assault, *N.J.S.A.* 2C:5–2 and 2C:12–1b.

part of the Legislature to prohibit the Family Court from imposing suspended sentences. Defendants also argue in part that the Juvenile Code and Criminal Code overlap. They assert that *R.* 5:1-1, which provides, "[j]uvenile delinquency actions shall be governed by the rules in Part III insofar as applicable and except as otherwise provided by the rules in Part V," when coupled with *R.* 3:21-7 and *N.J.S.A.* 2C:43-2b, which allow suspended sentences for adults, leads to the conclusion that suspended sentences are permitted because the Code does not address the issue. We reject the State's argument that mere omission in the Code of a suspended sentence as an authorized disposition renders it illegal. Likewise, we disagree with defendants' assertion that suspended sentences are implicitly permitted from a reading of *R.* 5:1-1, *R.* 3:21-7 and *N.J.S.A.* 2C:43-2b. We, however, agree that suspended sentences are neither directly nor indirectly prohibited by the Code.

We begin our analysis with the provisions of *N.J.S.A.* 2A:4A-43b, which list twenty dispositions available to judges when imposing sentence upon a juvenile offender.

If a juvenile is adjudged delinquent . . . the court may order incarceration pursuant to [*N.J.S.A.* 2A:4A-44] or any one or more of the following dispositions:

(1) Adjourn formal entry of disposition of the case for a period not to exceed 12 months for the purpose of determining whether the juvenile makes a satisfactory adjustment, and if during the period of continuance the juvenile makes such an adjustment, dismiss the complaint; provided that if the court adjourns formal entry of disposition of delinquency for a violation of an offense defined in chapter 35 or 36 of Title 2C of the New Jersey Statutes the court shall assess the mandatory penalty set forth in *N.J.S.* 2C:35-15 but may waive imposition of the penalty set forth in *N.J.S.* 2C:35-16 for juveniles adjudicated delinquent;

(2) Release the juvenile to the supervision of the juvenile's parent or guardian;

(3) Place the juvenile on probation to the chief probation officer of the county or to any other suitable person who agrees to accept the duty of probation supervision for a period not to exceed three years upon such written conditions as the court deems will aid rehabilitation of the juvenile;

(4) Transfer custody of the juvenile to any relative or other person determined by the court to be qualified to care for the juvenile;

(5) Place the juvenile under the care and responsibility of the Department of Human Services so that the commissioner may designate a division or organizational unit in the department pursuant to P.L.1951, c. 138 (C. 30:4C-1 et seq.) for the purpose of providing services in or out of the home. . . .;

(6) Place the juvenile under the care and custody of the Commissioner of Human Services for the purpose of receiving the services of the Division of Developmental Disabilities of that department, provided that the juvenile has been determined to be eligible for those services under P.L.1965, c. 59, S. 16 (C. 30:4–25.4);

(7) Commit the juvenile, pursuant to applicable laws and the Rules of Court governing civil commitment, to the Department of Human Services under the responsibility of the Division of Child Behavioral Health Services for the purpose of placement in a suitable public or private hospital or other residential facility for the treatment of persons who are mentally ill, on the ground that the juvenile is in need of involuntary commitment;

(8) Fine the juvenile an amount not to exceed the maximum provided by law for such a crime or offense if committed by an adult and which is consistent with the juvenile's income or ability to pay and financial responsibility to the juvenile's family, provided that the fine is specially adapted to the rehabilitation of the juvenile or to the deterrence of the type of crime or offense. If the fine is not paid due to financial limitations, the fine may be satisfied by requiring the juvenile to submit to any other appropriate disposition provided for in this section;

(9) Order the juvenile to make restitution to a person or entity who has suffered loss resulting from personal injuries or damage to property as a result of the offense for which the juvenile has been adjudicated delinquent. . . .;

(10) Order that the juvenile perform community services under the supervision of a probation division or other agency or individual deemed appropriate by the court. . . .;

(11) Order that the juvenile participate in work programs which are designed to provide job skills and specific employment training to enhance the employability of job participants. . . .;

(12) Order that the juvenile participate in programs emphasizing self-reliance, such as intensive outdoor programs teaching survival skills, including but not limited to camping, hiking and other appropriate activities;

(13) Order that the juvenile participate in a program of academic or vocational education or counseling, such as a youth service bureau, requiring attendance at sessions designed to afford access to opportunities for normal growth and development. This may require attendance after school, evenings and weekends;

(14) Place the juvenile in a suitable residential or nonresidential program for the treatment of alcohol or narcotic abuse, provided that the juvenile has been determined to be in need of such services;

(15) Order the parent or guardian of the juvenile to participate in appropriate programs or services when the court has found either that such person's omission or conduct was a significant contributing factor towards the commission of the delinquent act, or, under its authority to enforce litigant's rights, that such person's omission or conduct has been a significant contributing factor towards the ineffective implementation of a court order previously entered in relation to the juvenile;

(16) (a) Place the juvenile in a nonresidential program operated by a public or private agency, providing intensive services to juveniles for specified hours, which

may include education, counseling to the juvenile and the juvenile's family if appropriate, vocational training, employment counseling, work or other services;

(b) Place the juvenile under the custody of the Juvenile Justice Commission established pursuant to section 2 of P.L.1995, c. 284 (C. 52:17B–170) for placement with any private group home or private residential facility with which the commission has entered into a purchase of service contract;

(17) Instead of or in addition to any disposition made according to this section, the court may postpone, suspend, or revoke for a period not to exceed two years the driver's license, registration certificate, or both of any juvenile who used a motor vehicle in the course of committing an act for which the juvenile was adjudicated delinquent.... Any postponement, suspension, or revocation shall be imposed consecutively with any custodial commitment;

(18) Order that the juvenile satisfy any other conditions reasonably related to the rehabilitation of the juvenile;

(19) Order a parent or guardian who has failed or neglected to exercise reasonable supervision or control of a juvenile who has been adjudicated delinquent to make restitution to any person or entity who has suffered a loss as a result of that offense ....; or

(20) Place the juvenile, if eligible, in an appropriate juvenile offender program established pursuant to P.L.1997, c. 81 (C. 30:8–61 et al.).

Suspended sentence is neither listed as an available disposition under *N.J.S.A.* 2A:4A–43b, nor is it mentioned as a consideration to be used in determining incarceration under *N.J.S.A.* 2A:4A–44.

In framing the issue before us, we are guided in large part by our Supreme Court's decision in *State in the Interest of J.L.A.*, 136 *N.J.* 370, 643 *A.*2d 538 (1994). In *J.L.A.*, the Court held that the omission of consecutive sentences as an expressed disposition did not necessarily reflect an intention on the part of the Legislature to preclude the Family Court from imposing consecutive terms because their use, in appropriate circumstances, was harmonious with the rehabilitative and penological purposes of the Code. *Id.* at 380–383, 643 *A.*2d 538. In deciding the issue, the Court initially concluded that the judiciary had the inherent power, "absent a statutory prohibition," to impose consecutive sentences as that power was "derived from the common law" and has been "consistently ... recognized by our courts." *Id.* at 374, 643 *A.*2d 538.

██ Accordingly, once it is determined that a particular disposition under consideration has its roots in common law and has been

consistently applied by our courts, it must then be decided whether the Legislature intended to prohibit its use. Similar to consecutive sentences, our judiciary has consistently exercised its inherent power, under common law, to impose suspended sentences, absent preclusion by the Legislature. *See State v. Bausch,* 83 *N.J.* 425, 433, 416 *A.*2d 833 (1980) (allowing restitution as condition of probation even though not listed in statute because of inherent power to impose probation and suspend sentences, but failing to order restitution in this case because related charges dismissed); *Adamo v. McCorkle,* 13 *N.J.* 561, 564–66, 100 *A.*2d 674 (1953) (no longer concerned with common law practice of suspending adult sentences even though it antedated statutory authority because Legislature expressly provided for suspended sentences in adult statute), *cert. denied,* 347 *U.S.* 928, 74 *S.Ct.* 531, 98 *L.Ed.* 1080 (1954); *Ex parte Samber,* 13 *N.J.Super.* 410, 412–13, 80 *A.*2d 487 (Law Div.1951) (courts have inherent power to suspend sentences for a reasonable length of time); *Gehrmann v. Osborne,* 79 *N.J. Eq.* 430, 445–46, 82 *A.* 424 (Ch.1911) (court has common law power to suspend sentence).

Illustrative of instances where the Legislature has precluded the courts from exercising their inherent common law power to impose suspended sentences are the cases dealing with mandatory minimum terms. *See State v. Des Marets,* 92 *N.J.* 62, 80–81, 455 *A.*2d 1074 (1983) (discussing minimum mandatory imprisonment under the Graves Act reflects the legislative intent to expressly preclude suspended sentence); *State v. Johnson,* 42 *N.J.* 146, 174–75, 199 *A.*2d 809 (1964) (holding the minimum mandatory three-month custodial sentence for second offenders under former DWI provisions of *N.J.S.A.* 39:4–50 reflects the intention to prohibit suspended sentences).

■ The State argues that the 1973 repeal of *N.J.S.A.* 2A:4–36, adopted in 1929,[4] which expressly provided for suspended sen-

---

[4] *N.J.S.A.* 2A:4–36, adopted in 1929, was repealed and superseded by the 1973 version known as the Juveniles in Need of Supervision Law. The present version of the Code, adopted in 1982, supersedes the 1973 version.

tences, together with the omission in the present version of the Code adopted in 1982, reflects a deliberate intent on the part of the Legislature to preclude suspended sentences as an authorized disposition. We disagree. First and foremost, there is no expressed prohibition of the use of suspended sentences in the Code. Moreover, *N.J.S.A.* 2A:4A–43b(18), which provides that the Family Court may "[o]rder that the juvenile satisfy any other conditions reasonably related to the rehabilitation of the juvenile," impliedly permits dispositions beyond those specifically enumerated in the Code.

Contrary to the State's contention, *N.J.S.A.* 2A:4–36, which was adopted when the court was given jurisdiction over domestic relations matters, did not apply to juvenile offenders, only adult offenders who came before the court. *State in Interest of M.L.,* 64 *N.J.* 438, 442, 317 *A.*2d 65 (1974). Indeed, from an historical perspective, suspended sentences have been consistently imposed under the 1929, 1973, and present version of the Code:

### (1) *UNDER THE 1929 VERSION*

*State in Interest of A.C.,* 115 *N.J.Super.* 77, 79, 278 *A.*2d 225 (App.Div.1971) (juvenile appealed from adjudication of delinquency and suspended sentence); *State in Interest of L.N.,* 109 *N.J.Super.* 278, 281, 263 *A.*2d 150 (App.Div.) (juvenile appealed from adjudication of delinquency and suspended sentence), *aff'd o.b.,* 57 *N.J.* 165, 270 *A.*2d 409 (1970), *cert. denied,* 402 *U.S.* 1009, 91 *S.Ct.* 2194, 29 *L. Ed.*2d 431 (1971); *State v. Miles,* 87 *N.J.Super.* 571, 581, 210 *A.*2d 236 (Law Div.1965) (defendant received suspended sentence as juvenile), *aff'd o.b.,* 94 *N.J.Super.* 169, 227 *A.*2d 346 (App.Div.1967); *In re Application of Daniecki,* 117 *N.J. Eq.* 527, 528, 177 *A.* 91 (Ch.1935) (court may suspend sentence and place juvenile offender on probation), *aff'd o.b.,* 119 *N.J. Eq.* 359, 183 *A.* 298 (E. & A.1936).

### (2) *UNDER THE 1973 VERSION*

*State in Interest of B.C.L.,* 82 *N.J.* 362, 368–69, 382, 413 *A.*2d 335 (1980) (affirming release of information including juvenile's

name, offense, and disposition after juvenile found delinquent and trial court suspended sentence to Yardville); *State in Interest of D.A.M.*, 132 *N.J.Super.* 192, 193–94, 333 *A.2d* 270 (App.Div.1975) (juvenile received suspended sentence, but Appellate Division reversed his conviction on constitutional grounds); *State in Interest of M.H.*, 131 *N.J.Super.* 288, 291, 329 *A.2d* 579 (App.Div.1974) (affirming suspended sentence as proper exercise of trial judge's discretion); *State in Interest of C.B.*, 163 *N.J.Super.* 215, 216, 394 *A.2d* 414 (J. & D.R. Ct.1978) (juvenile pled guilty, received a suspended sentence to Yardville and was placed on probation until his eighteenth birthday); *State in Interest of J.J.*, 132 *N.J.Super.* 464, 471, 334 *A.2d* 80 (J. & D.R. Ct.1975) (asserting "a suspended sentence following a formal adjudication with the realistic alternative of incarceration may in many instances be sufficient to motivate cooperation with the probation program by the otherwise indifferent juvenile").

### (3) *UNDER THE PRESENT VERSION*

*In re Registrant J.G.*, 169 *N.J.* 304, 310, 312, 777 *A.2d* 891 (2001) (mentioning that the State recommended a suspended sentence, and the juvenile received an indeterminate custodial term not to exceed three years, which was suspended, and the juvenile was placed on probation for two years with two conditions, but the case turned on a Megan's Law issue); *State in Interest of M.T.S.*, 129 *N.J.* 422, 450, 609 *A.2d* 1266 (1992) (reversing Appellate Division, 247 *N.J.Super.* 254, 255–56, 588 *A.2d* 1282 (App.Div.1991), reinstating two-year suspended sentence and placing juvenile on probation for two years); *State in Interest of M.C.*, 303 *N.J.Super.* 624, 626, 697 *A.2d* 571 (App.Div.1997) (affirming juvenile's one-year custodial term, which was suspended on the condition that M.C. participate in the Total Life Program).

We conclude that our courts have consistently exercised their inherent common law power to impose suspended sentences under the various juvenile laws over the years, including the present Code. Moreover, the provisions of the present statute neither

directly nor indirectly prohibit their use. This conclusion, however, does not end our inquiry. We must also decide whether the use of suspended sentences as a disposition is consistent with the purposes of the Code.

 The determination of whether suspended sentences are a permitted disposition under the Code requires us to "consider the critical factor of the extent to which such sentences are consistent with the ... Code's rehabilitative and penological objectives." *J.L.A., supra,* 136 *N.J.* at 376, 643 *A.*2d 538. Under *N.J.S.A.* 2A:4A–24, the Family Court "may impose such disposition or dispositions over [those juveniles determined to have committed an act of delinquency as are] consistent with the purposes of this act." In reaching our decision whether suspended sentences are allowable under the Code, we are directed to apply the "settled principle that '[t]he construction that will best effectuate the statute's ultimate objectives is to be preferred.' " *J.L.A., supra,* 136 *N.J.* at 377, 643 *A.*2d 538.

*N.J.S.A.* 2A:4A–21, which denotes the legislative purposes of the Code, provides:

This act shall be construed so as to effectuate the following purposes:

a. To *preserve the unity of the family* whenever possible and to provide for the care, protection, and wholesome mental and physical development of juveniles coming within the provisions of this act;

b. Consistent with the protection of the public interest, to remove from children committing delinquent acts certain statutory consequences of criminal behavior, and to substitute therefore *an adequate program of supervision, care and rehabilitation, and a range of sanctions designed to promote accountability and protect the public;*

c. To *separate juveniles from the family environment only when necessary for their health, safety or welfare or in the interests of public safety;*

d. To secure for each child coming under the jurisdiction of the court such care, guidance and control, *preferably in his own home, as will conduce to the child's welfare and the best interests of the State;* and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents;

e. To insure that children under the jurisdiction of the court are wards of the State, subject to the discipline and entitled to the protection of the State, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them; and

f. _Consistent with the protection of the public interest, to insure that any services and sanctions for juveniles provide balanced attention to the protection of the community, the imposition of accountability for offenses committed, fostering interaction and dialogue between the offender, victim and community and the development of competencies to enable children to become responsible and productive members of the community._ (emphasis added).

The Senate Judiciary Committee Statement (Committee Statement) provides further insight into the statutory purposes, particularly its need for flexibility. In its introductory paragraph, the Committee Statement declares:

> This bill recognizes that the public welfare and the best interests of juveniles can be served most effectively through an approach which provides for harsher penalties for juveniles who commit serious acts or who are repetitive offenders, while broadening family responsibility and the use of alternative dispositions for juveniles committing less serious offenses. Moreover, the provisions of this bill and the other accompanying bills reflect a philosophy which is pragmatic and realistic in nature rather than bound to any particular ideology.

[Senate Judiciary Committee, _Statement to Assembly_, No. 641 (1982).]

Discussing Section 24 of the Code (_N.J.S.A._ 2A:4A–43), the Committee Statement provided the following additional insight:

> Section 24 ... _significantly broadens the dispositions available_ to the courts by _adding numerous alternative dispositions beyond what is presently available._ Those dispositions include fines, restitution, probation, community service, transfer of custody, placement with the Department of Human Services and vocational training. The court may also order the parents of the juvenile to participate in the disposition. (emphasis added).

Thus, the expressed legislative objective is to "significantly broaden[ ]" the dispositions previously available to the court under the 1973 version, which contained a catch-all dispositional provision not found in the current statute, providing for "[s]uch other disposition not inconsistent with this act as the court may determine." _N.J.S.A._ 2A:4–61i.

The State argues on appeal that the most lenient authorized disposition under _N.J.S.A._ 2A:4A–43b(1) is adjournment of formal entry of disposition for up to twelve months, thus eliminating a suspended sentence as an option. The State's argument misses the mark. Flexibility remains one of the major hallmarks of the Code, not the favoring of one disposition over another. Explaining Section 2 of the Code (_N.J.S.A._ 2A:4A–21) and commenting on

the purpose of the Act, the Committee Statement set forth the following:

> The language in this section combines the purpose sections in the current juvenile statutes and stresses such concepts as the preservation of the family unit and the rehabilitation of juveniles consistent with the protection of the public.

To be sure, "rehabilitation remains a primary goal of the ... Code," which also reflects "a correlative emphasis on public safety and deterrence." *J.L.A.*, *supra*, 136 *N.J.* at 377–78, 643 *A.*2d 538. " '[P]unishment has now joined rehabilitation as a component of the State's core mission with respect to juvenile offenders.' " *State v. Franklin*, 175 *N.J.* 456, 466, 815 *A.*2d 964 (2003) (quoting *State v. Presha*, 163 *N.J.* 304, 314, 748 *A.*2d 1108 (2000)). Our focus, when determining the dispositional objectives of the Code, is neither leniency nor the elimination of one disposition over another, as urged by the State. Rather, it is whether a suspended sentence fits within the intended legislative framework of the Code, thereby providing Family Court judges the necessary flexibility to determine the best possible course of action to be taken when considering a disposition, which under the particular circumstances will accomplish both rehabilitation and preservation of the family unit and at the same time protect society. We are satisfied that the use of suspended sentences is neither directly nor indirectly prohibited by the Code, is consistent with the expressed purposes of the Code, and provides the needed flexibility to effectuate both the rehabilitative and penological goals of the Code. Accordingly, we affirm.