MESSANO, P.J.A.D.
*483 The Code of Juvenile Justice (the Code), N.J.S.A. 2A:4A-20 to -48, grants the Family Part "exclusive jurisdiction in all cases where it is charged that a juvenile has committed an act of delinquency." N.J.S.A. 2A:4A-24(a) ; see also N.J.S.A. 2A:4A-23 (defining delinquency as "the commission of an act by a juvenile which if committed by an adult would constitute ... [a] crime ... disorderly persons offense or petty disorderly persons offense ... or ... violation of any other penal statute, ordinance or regulation"). "One of the 'major hallmarks of the Code' was to provide the newly created, specialized family court with flexibility in juvenile dispositions." State ex rel. C.V., 201 N.J. 281, 295, 990 A.2d 640 (2010) (quoting State ex rel. M.C., 384 N.J. Super. 116, 127, 894 A.2d 60 (App. Div. 2006) ).
We have said, "[e]ven with respect to a juvenile charged with conduct that would be a crime if committed by an adult, the overriding goal of the juvenile justice *962 system is rehabilitation, not punishment." State ex rel. S.S., 367 N.J. Super. 400, 407, 842 A.2d 904 (App. Div. 2004), aff'd, 183 N.J. 20, 869 A.2d 875 (2005). The Court, nevertheless, has emphasized that while "rehabilitation traditionally has been regarded as the overarching objective of *484 statutory schemes addressing juvenile delinquency ... and ... rehabilitation remains a primary goal of the ... Code[,]" the "Code also reflects a correlative emphasis on public safety and deterrence." State ex rel. J.L.A., 136 N.J. 370, 377-78, 643 A.2d 538 (1994) ; compare e.g., N.J.S.A. 2A:4A-21(a) (stating one purpose of the Code is "the care, protection, and wholesome mental and physical development of juveniles"), with N.J.S.A. 2A:4A-21(f) (stating another purpose is to "insure that any services and sanctions for juveniles provide balanced attention to the protection of the community, ... [and] accountability for offenses committed"). In short, the Code "provides a comprehensive scheme that empowers Family Part judges to tailor dispositions toward aiding and rehabilitating juveniles charged with delinquent acts, while simultaneously ensuring protection of the public from dangerous and/or repetitive juvenile offenders." C.V., 201 N.J. at 285, 990 A.2d 640.
We granted the State's motions for leave to appeal in these four appeals involving seven different juveniles and now consolidate the appeals in a single opinion. We must construe specific provisions of the Code and our Court Rules that reflect the rehabilitative and deterrent purposes of the Code, and which govern the balance of authority and responsibility between the prosecutor and the court in attempting to achieve those goals.
I.
Before addressing the legal issues presented, we provide some factual background as to each appeal, all of which are taken from orders entered by the same Family Part judge.[1]
*485 State in the Interest of N.P. (A-0135-17)
On April 7, 2017, N.P., then sixteen-years old, was a backseat passenger in a car stopped by East Brunswick Police. Upon approaching the car, the officer claimed to have detected the odor of burnt marijuana. Subsequent investigation revealed ten white pills in N.P.'s jacket pocket. He was arrested and charged with unlawful possession of a prescription drug, N.J.S.A. 2C:35-10.5(e)(2), a fourth-degree crime.
The prosecutor recommended the complaint proceed to court on the "mandatory counsel calendar." The probation officer assigned to court intake services noted the prosecutor's recommendation and placed the matter on the July 3, 2017 court calendar.
On June 30, without notice or hearing, the judge entered an order that is the subject of our review. She noted the complaint was referred to court pursuant to N.J.S.A. 2A:4A-71(b) because it charged N.P. with a fourth-degree crime and the prosecutor had not consented to its diversion. However, citing N.J.S.A. 2A:4A-73(a), the judge diverted the complaint to the Juvenile Conference Committee (JCC), noting she was providing a statement of reasons to the complainant "pursuant to N.J.S.A. 2A:4A-73(b)."
*963 The letter sent by the judge to the complaining police officer stated this was N.P.'s first involvement with the juvenile justice system, and the offense with which he was charged "resulted in no personal injury or property damage." The judge also identified the "most important factor" in her decision-"the availability of appropriate services outside referral to the court."
The judge stated that given the nature of the offenses, even "if th[e] matter were heard in court and [N.P.] plead[ed] guilty ..., it [was] probable ... he would be given a deferred disposition." See N.J.S.A. 2A:4A-43(b)(1). She explained that under a deferred disposition, there would be no monitoring or counseling for N.P. However, the JCC could impose "a multitude of creative conditions" and provide "the individualized attention [N.P.] may need." The judge explained that the JCC met in the evening, a more *486 convenient time for all involved, and the officer would be able to attend its meetings.
State in the Interest of N.P. (A-0841-17)
Now seventeen-years-old, N.P. was arrested again on July 13, 2017, when a Spotswood police officer approached a car in a school parking lot at 11:30 p.m. An adult was in the driver's seat and N.P. was in the front passenger seat. Police allegedly found a small amount of marijuana in the center console and subsequently seized several bags with small traces of marijuana as well as smoking devices. N.P. was charged with possession of marijuana, N.J.S.A. 2C:35-10(a)(4), and possession of drug paraphernalia, N.J.S.A. 2C:36-2, both disorderly persons offenses.
On August 15, 2017, the prosecutor screened the case, referred it to the mandatory counsel calendar, and intake services forwarded the complaint to court, noting the prosecutor did not consent to its diversion. On September 12, without notice or hearing, the judge entered the order under review, diverting the complaint to an Intake Services Conference (ISC) pursuant to N.J.S.A. 2A:4A-73(a). The order also noted the complaint alleged disorderly persons violations of chapter 35 of the Criminal Code, and pursuant to N.J.S.A. 2A:4A-71, the prosecutor had not consented to diversion.
Upon receiving notice that an ISC conference was set for October 2, the State objected in a letter to probation, noting we had already granted leave to appeal in A-0135-17, and questioning whether intake services had considered the factors listed in N.J.S.A. 2A:4A-71(b) (listing eleven factors "intake services shall consider ... in determining whether to recommend diversion"). The judge responded in writing, noting that although we had granted leave to appeal the June 30, 2017 order regarding N.P.'s April arrest, we had not stayed proceedings in the Family Part.[2]
*487 She further explained that it had been the practice for many years in the vicinage to "escalate cases to the [ISC] when a juvenile incurs a subsequent charge while pending before the [JCC]." "[M]ore importantly,"
*964 the judge concluded N.P. would benefit from services ISC could put in place while N.P.'s "enrollment to the [JCC] was pending." The judge summarized: "The [c]ourt is confident that its decision to divert the complaint to the [ISC] is in the [j]uvenile's best interests and furthers the purpose of the ... Code, which is to rehabilitate the [j]uvenile."
State in the Interest of D.S. (A-0138-17)
On February 23, 2017, sixteen-year-old D.S. entered Colonia High School, where he was not a student, and allegedly participated in two classes before being asked to leave. The State also alleged D.S. posted a recording of his exploits on Twitter and criticized the lax security at the school. Several days later, police arrested D.S. and charged him with fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a).
For reasons unexplained by the record, the prosecutor did not screen the complaint until June, and, on June 29, 2017, intake services referred the complaint to court, noting the prosecutor did not consent to diversion. On June 30, once again without a hearing, the judge entered the order under review diverting the case to the JCC pursuant to N.J.S.A. 2A:4A-73(a). The judge sent a letter to the complaining witness, the principal of Colonia High School, noting D.S. was a first time offender whose alleged offense involved no personal injury or property damage.
*488 The principal, school security officer and superintendent of schools signed a letter dated July 6, 2017, objecting to the court's diversion order. On July 20, the judge returned the letter because it was an ex parte communication.
In her written statement of reasons filed in response to the State's motion for leave to appeal, the judge explained that the State's policy of objecting to diversion was contrary to past practices, since the State had consented to diversion in at least five other cases involving trespass on school property.[3]
State in the Interest of A.W., J.D., J.DO., A.S, and J.Z. (A-0308-17)
On March 11, 2017, a South River officer stopped a car containing five juveniles because it had a broken taillight. The officer allegedly smelled burnt marijuana coming from the car, and an ensuing investigation revealed a bag with less than fifty grams of marijuana and a pipe. The juveniles, sixteen-year-old A.W., seventeen-year-old J.D., sixteen-year-old J.Do., sixteen-year-old, A.S., and seventeen-year-old J.Z., were arrested and charged with possession of marijuana, N.J.S.A. 2C:35-10(a)(4), and possession of drug paraphernalia, N.J.S.A. 2C:36-2, both disorderly persons offenses.
The prosecutor screened the complaints and referred them to court. Noting the prosecutor's recommendation, intake services forwarded the complaints for court action and set a court date of June 26.
On that day, the judge held hearings as to each complaint on the record with the prosecutor, defense counsel and the juvenile present. The judge heard from the prosecutor as to why the State refused to consent to diversion and, over the prosecutor's objection, entered an order referring each complaint to the JCC.
*489 The State moved for reconsideration, and the judge heard oral argument on August 11. In a comprehensive oral opinion, the judge denied the motion for reconsideration without prejudice. She supplemented her decision in a written statement *965 of reasons filed in response to the State's motion for leave to appeal.[4]
II.
Resolution of these appeals turns on the interplay between intake services, the Family Part judge and the prosecutor that the Code and our Court Rules intend. The provisions of N.J.S.A. 2A:4A-70 to -74 were a single bill, A-645,
which revise[d] and standardize[d] ... the processing and handling of juvenile matters prior to involvement by the court, thus permitting some matters to be disposed of outside the courtroom.
[Governor's Signing Statement on signing Assembly Bill No. 645 (July 23, 1982).]
See also Senate Revenue, Finance and Appropriations Committee, Statement to Assembly Bill No. 645 (Mar. 15, 1982) ("The essential purpose of the intake service as provided for in [ N.J.S.A. 2A:4A-70 to -74] is to provide for a means whereby less serious *490 matters can be resolved ... outside the courtroom itself, thereby freeing the court to devote more of its time to serious and violent juvenile offenders.").
N.J.S.A. 2A:4A-70(a) mandates, "[e]ach county ... establish a court intake service" which, pursuant to N.J.S.A. 2A:4A-70(b), "shall make arrangements for the receipt of complaints, on a continuous basis, in situations where the subject of the complaint is a juvenile." The Legislature expressly provided
The Supreme Court shall have the authority to issue rules governing the duties, responsibilities, and practices of court intake services as it deems necessary to effectuate the purposes of this act; establish guidelines and procedures for the training of intake services staff ....
[ N.J.S.A. 2A:4A-70(d).]
When enacted in 1982, N.J.S.A. 2A:4A-71(b) provided:
Every complaint shall be reviewed by court intake services for recommendation as to whether the complaint should be dismissed, diverted, or referred for court action. Where the complaint alleges a crime which, if committed by an adult, would be a crime of the first, second, third or fourth degree, or a repetitive disorderly persons offense, [5 ]the complaint *966 shall be referred for court action, unless the prosecutor otherwise consents to diversion.
[ N.J.S.A. 2A:4A-71(b) (1982) (emphasis added).]
Section 71(b) also lists eleven factors that intake services "shall consider ... in determining whether to recommend diversion."
Promulgated concurrently with N.J.S.A. 2A:4A-71(b), Rule 5:20-1(c) (the Rule ) states
Every complaint alleging juvenile delinquency shall be reviewed by court intake services in the manner provided by law for recommendation as to whether the complaint should be dismissed, diverted or referred for further court action. Where the complaint alleges conduct which, if committed by an adult, would constitute a crime as defined by N.J.S.[A.] 2C:1-4a or a repetitive disorderly persons offense as defined by N.J.S.[A] 2A:4A-22(h), the matter shall not be diverted by the court unless the prosecutor consents thereto.
[ (Emphasis added).]
The Rule"was a new provision adopted as part of the Part V revision to comport with N.J.S.[A.] 2A:4A-70 to [-]74, inclusive."
*491 Pressler, Current N.J. Court Rules, cmt. 3 on R. 5:20-1 (1985); see also State in the Interest of K.A.W., 104 N.J. 112, 119, 515 A.2d 1217 (1986) (recognizing promulgation of "parallel Rules of Court" with enactment of other sections of the Code).
In 1988, the Legislature amended N.J.S.A. 2A:4A-71(b), adding that a complaint alleging "any disorderly persons offense defined in Chapter 35 or Chapter 36 of Title 2C" shall also "be referred for court action, unless the prosecutor otherwise consents to diversion."[6] L. 1988, c. 44. The Rule, however, was never amended.
N.J.S.A. 2A:4A-73(a) provides without regard to the offense charged that "[t]he court may divert a complaint filed pursuant to [ N.J.S.A. 2A:4A-30[7] ] to intake conferences or juvenile conference committees[,]" and, "[w]here the complaint alleges a disorderly persons or petty disorderly persons offense the court may dispose of the case as a juvenile-family crisis .... The county prosecutor shall be promptly notified of the diversion of a complaint." If the court diverts a complaint charging a juvenile with a crime, "[t]he complainant or victim ... shall receive a statement as to the reasons for the proposed diversion." N.J.S.A. 2A:4A-73(b). Proceedings before the ISC and JCC are detailed in N.J.S.A. 2A:4A-74 and -75 respectively.
We have only addressed the Rule and these statutory provisions once in a published opinion. In State ex rel. N.L., 345 N.J. Super. 25, 33, 783 A.2d 260 (App. Div. 2001), we held the mandatory license suspension or postponement required upon adjudication for a violation of N.J.S.A. 2C:33-3.1a (false alarms) did not apply to a juvenile who successfully completed a period of adjustment pursuant to a deferred disposition, N.J.S.A. 2A:4A-43b(1). We noted in *492 a footnote that the juvenile applied for diversion, but the prosecutor objected "apparently pursuant to [the Rule ]." Id. at 33-34, 783 A.2d 260 n.4. We specifically did "not reach or address ... whether application of N.J.S.A. 2A:4A-73 or other principles of law would have permitted *967 diversion of this complaint by the Family Part notwithstanding the prosecutor's objection." Ibid.
With this framework in mind, we return to the issues presented in these appeals.
III.
The State argues that the statutory scheme is clear. Whenever a juvenile is charged with a non-divertible offense, the complaint may not be diverted unless the prosecutor consents. Since the juveniles in these appeals were all charged with non-divertible offenses, and the prosecutor refused to consent to diversion, the judge erred by diverting any of the complaints.
The judge expressed a different view of the Code and the Rule in her decisions. Where the juvenile was charged with conduct that if committed by an adult would be a crime, (as in A-0135-17 and A-0138-17), the judge reasoned that although N.J.S.A. 2A:4A-71(b) (Section 71) required intake services to refer the complaint to court because the prosecutor had not consented to diversion, N.J.S.A. 2A:4A-73(a) (Section 73) "vest[ed] the trial court with the ability to divert the complaint to the JCC." She stated, "it would be in the interests of justice to vest the juvenile judge, and not the prosecutor's office, with the discretion to divert complaints," and would further the court's parens patriae obligations. The judge further explained that if the Rule gave the prosecutor "unfettered discretion" to decide which complaints to divert, it would conflict with Section 73, which vested the responsibility for that decision with the court.
She further concluded that interpreting the Rule as the State urged was inconsistent with Section 73's plain language and "would mean there [were] no checks and balance[s] on the State's powers. For example, there would be no way to stop the State *493 from arbitrarily deciding to divert only non-minority complaints, or those complaints from one municipality." The judge also reasoned that if the State could unilaterally refuse to consent to diversion, juveniles would be forced to retain counsel, thereby frustrating, in part, the purpose of diversion.
Regarding the five juvenile complaints that are the subject of A-0308-17, the judge concluded she acted in accordance with Section 73. She noted that intake services scheduled the cases for court, the juveniles were present with counsel and the prosecutor was given an opportunity to be heard. The judge concluded the Rule did not apply because, by its terms, it was inapplicable to complaints charging disorderly persons offenses, except repetitive disorderly persons offenses.[8]
A.S. is the only juvenile to file opposition to the State's appeals.[9] A.S. agrees with the judge's reasoning and argues that Section 73 and the Rule permit the judge to divert a complaint charging a juvenile with Title 35 and Title 36 disorderly persons offenses without the consent of the prosecutor.
A.
In construing any statute, "[o]ur task ... 'is to discern and give effect' to the Legislature's intent." State v. Munafo, 222 N.J. 480, 488, 120 A.3d 170 (2015)
*968 (quoting State v. O'Driscoll, 215 N.J. 461, 474, 73 A.3d 496 (2013) ). "To begin, we look at the plain language of the statute." Ibid. (citing State v. Frye, 217 N.J. 566, 575, 90 A.3d 1281 (2014) ; DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ). "[T]he words chosen by the Legislature *494 should be accorded their ordinary and accustomed meaning." State v. Hudson, 209 N.J. 513, 529, 39 A.3d 150 (2012).
"[I]f a statute's plain language is ambiguous or subject to multiple interpretations, the Court 'may consider extrinsic evidence including legislative history and committee reports.' " Frye, 217 N.J. at 575, 90 A.3d 1281 (quoting State v. Marquez, 202 N.J. 485, 500, 998 A.2d 421 (2010) ). "When, as here, two related statutes are relevant to the disposition of a matter, they 'should be read in pari materia and construed together as a unitary and harmonious whole.' " State v. Nance, 228 N.J. 378, 395, 157 A.3d 439 (2017) (quoting Nw. Bergen Cty. Utils. Auth. v. Donovan, 226 N.J. 432, 444, 143 A.3d 290 (2016) ).
B.
Section 71 mandates that all complaints charging a juvenile with a non-divertible offense "shall be referred for court action." (Emphasis added). "[T]he Legislature's choice of the word 'shall,' [ ] is ordinarily intended to be mandatory, not permissive." State v. Bolvito, 217 N.J. 221, 230, 86 A.3d 131 (2014) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587-88, 59 A.3d 561 (2013) ). Therefore, since every complaint in these four appeals charged non-divertible offenses, and the prosecutor did not "otherwise consent[ ] to diversion," each complaint should have been heard by the judge in open court. The judge did not follow this procedure in the appeals involving N.P., and in the appeal involving D.S. Simply put, the statute does not permit the judge, without notice or hearing, to enter an order diverting a non-divertible complaint, unless the prosecutor has already consented to diversion.
Interpreting Section 73 to allow a judge to unilaterally divert complaints charging non-divertible offenses, as the judge did here with respect to N.P. and D.S., would simply negate both the Legislature's express directive that the complaint "shall be referred for court action," and the procedure adopted by the Court *495 in the Rule.[10] The Legislature has decided which offenses are less serious matters to be resolved "outside the courtroom itself," and which offenses are serious enough to require court action, unless the prosecutor otherwise consents. Senate Revenue, Finance and Appropriations Committee, Statement to Assembly Bill No. 645 (Mar. 15, 1982).
While a judge is free to disagree with the Legislature's decision that the nature of non-divertible offenses requires disposition in a courtroom unless the prosecutor otherwise consented, a "court must construe and apply a statute as enacted." State v. Lenihan, 219 N.J. 251, 262, 98 A.3d 533 (2014) (citing *969 In re Closing of Jamesburg High Sch., 83 N.J. 540, 548, 416 A.2d 896 (1980) ).
C.
Because the judge held hearings in open court as to all five juvenile orders that are the subjects of A-0308-17, this procedural miscue as to N.P. and D.S. does not resolve the most important issue before us. Essentially, in every appeal, the judge concluded Section 73 vested the court, not the prosecutor, with the ultimate authority to divert a juvenile complaint, regardless of the offense charged.
In part, the judge reasoned Section 73 was inconsistent with the Rule, and, by entering the orders under review in the two appeals where the juveniles are charged with crimes (A-0135-17 and A-0138-17), she expressly concluded the statute trumped the Rule. In the two appeals where the juveniles are charged with disorderly *496 persons offenses under Titles 35 and 36 of the Criminal Code (A-0308-17 and A-0841-17), the judge concluded the Rule simply did not apply and her authority under Section 73 was unfettered.
As noted, the Rule expressly prohibits diversion without the consent of the prosecutor if a juvenile is charged with a crime or repetitive disorderly persons offense. The Rule is entirely consistent with the State's position that when the complaint charges these particular non-divertible offenses, the prosecutor must consent to diversion. If the complaint charges the juvenile with a crime, the Court has clearly stated "the prosecutor's consent is needed before the court may divert the complaint." P.M.P., 200 N.J. at 177, 975 A.2d 441 (emphasis added) (citing R. 5:20-1(c) ). At least with respect to crimes and repetitive disorderly persons offenses, any inconsistency between the Rule and Section 73 results solely from the judge's conclusion that the court may divert any complaint, regardless of the offense charged, without the prosecutor's consent.
Furthermore, even if one accepted the proposition that the Rule conflicts with Section 73, the Rule controls. It is long settled that the Court's rulemaking power, when applied to matters of practice and procedure, is "not subject to overriding legislation." Winberry v. Salisbury, 5 N.J. 240, 255, 74 A.2d 406 (1950) ; see also In re Pfizer's Estate, 6 N.J. 233, 236, 78 A.2d 80 (1951) (holding "the Constitution of 1947 ... vests in the Supreme Court exclusively the rulemaking power ... with respect to practice and procedure in all the courts."). We have explained that "[u]nder ... Winberry... and In re Pfizer's Estate..., an inconsistency that may appear in matters of procedure between the provisions of [a] statute[ ] and [a] rule promulgated by the Supreme Court is resolved in favor of the supremacy of the court rules." State v. Ahrens, 25 N.J. Super. 201, 206, 95 A.2d 755 (App. Div. 1953) ; see also Borough of New Shrewsbury v. Block 115, Lot 4, 74 N.J. Super. 1, 8-9, 180 A.2d 387 (App. Div. 1962) (same).
Commenting on Winberry, Justice Zazzali explained "[i]f the statute in question involves procedural as opposed to substantive rights, the court rule ... prevails."
*497 Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 161, 836 A.2d 779 (2003) (Zazzali, J., concurring in part and dissenting in part). "In general terms, '[s]ubstantive law defines the parties' rights and duties, whereas procedural law regulates the means through which those rights and duties are enforced." New Jersey State Bar Ass'n v. State, 387 N.J. Super. 24, 48, 902 A.2d 944 (App. Div. 2006) (quoting Ferreira, 178 N.J. at 162, 836 A.2d 779 (Zazzali, J., concurring in part and dissenting in part) ). "[A] 'procedural rule' [i]s 'one step in the ladder to final determination and [which] can effectively *970 aid a court function.' " Williams v. State, 375 N.J. Super. 485, 510, 868 A.2d 1034 (App. Div. 2005) (quoting Suchit v. Baxt, 176 N.J. Super. 407, 427, 423 A.2d 670 (Law Div. 1980) ).
Here, we deal with a procedural matter, i.e., whether a juvenile complaint charging a crime or repetitive disorderly persons offense may be diverted without the prosecutor's consent. The Legislature enacted those provisions of the Code that deal with intake services, N.J.S.A. 2A:4A-70 to -74, "to revise and standardize court intake service procedures in the juvenile system." Sponsor's Statement to Assembly Bill No. 645 (January 19, 1982). The Legislature specifically left it to the Court to enact appropriate Rules to effect that goal. N.J.S.A. 2A:4A-70(d). "Part V of the Rules of Court was adopted ... to govern the practice and procedure in the ... Family Part, created with constitutional status in December 1983 when the former juvenile and domestic relations courts were abolished and to which the jurisdiction of those courts was transferred." Pressler & Verniero, Current N.J. Court Rules, comment 1 on R. 5:1-1 (2018) (emphasis added).
The judge erred in concluding Section 73 permitted her to divert juvenile complaints alleging crimes without the prosecutor's consent. As a result, we reverse and vacate the orders in A-0135-17 and A-0138-17. We remand those matters to the Family Part for further proceedings.
D.
There remains one more issue to address, and that is the failure to include Title 35 and 36 disorderly persons offenses in the *498 Rule, even though they were added to Section 71 by the Legislature in 1986. The State contends this is mere oversight. The judge, however, specifically concluded that because those offenses were not included in the Rule, the express language of Section 73 permitted her to divert the complaints without the prosecutor's consent. We agree with the judge.
Section 71 requires that intake services "refer[ ] for court action" any complaint charging a Title 35 or 36 disorderly persons offense unless the prosecutor consents to diversion. N.J.S.A. 2A:4A-71(b). The statute only limits the authority of intake services. No section of the Code limits the authority of the judge to divert the complaint after it is referred for court action. Indeed, without mention of the prosecutor's role, Section 73 vests the judge with the discretionary authority to divert any juvenile complaint. N.J.S.A. 2A:4A-73(a). Nor does the Rule, which governs the procedure to be followed once the complaint is referred to court, limit the judge's authority to divert a complaint charging a Title 35 or 36 disorderly persons offense.
Inadvertence may be, as the State contends, the only reason why Title 35 and 36 disorderly persons offenses are not contained in the Rule. However, "[t]he approach taken in respect of the construction of court rules is the same as that for the construction of statutes." State v. Clark, 191 N.J. 503, 508, 924 A.2d 542 (2007) (citations omitted). The plain language of the Rule only prohibits the judge from diverting a juvenile complaint charging a crime or repetitive disorderly persons offense without the prosecutor's consent.[11] As a result, we affirm the orders entered in A-0308-17.
Even though our reasoning in this part of the opinion would apply to the second *971 appeal involving N.P., A-0841-17, because the juvenile was charged in the underlying complaint with only Title 35 and 36 disorderly persons offenses, we nevertheless reverse and remand in that appeal. First, the judge never accorded the *499 State a hearing in that matter before diverting the complaint. Second, because we are reversing in A-0135-17, involving the same juvenile, and holding that the judge may not divert that complaint without the prosecutor's consent, we believe it prudent to have the judge accord the State and defense counsel an opportunity to be heard before any further action is taken.
Reversed and remanded in A-0135-17, A-0138-17 and A-0841-17; affirmed in A-0308-17. We do not retain jurisdiction.

The record is essentially limited to the allegations contained in the filed complaints and police reports, and the judge's letters to complaining witnesses. Additionally, in response to two of the State's motions for leave to appeal, the judge provided a comprehensive, supplementary written statement of reasons, see Rule 2:5-6(c), which we greatly appreciate.

The judge mistakenly concluded she had continuing jurisdiction over the April 2017 complaint against N.P., the subject of A-0135-17. She cited Rule 2:5-6(a), which states "[t]he filing of a motion for leave to appeal shall not stay the proceedings in the trial court ... except on motion made to the court ... which entered the order or if denied by it, to the appellate court[,]" and noted we had not entered any stay. However, we granted the State's motion for leave to appeal in A-0135-17 on September 8, 2017, thereby divesting the judge of jurisdiction regarding that complaint. See R. 2:9-1(a) (granting Appellate Division exclusive jurisdiction over all proceedings on appeal). We agree with the judge, however, that we had not exercised any jurisdiction over the July 2017 complaint, which was properly before her.

We do not dispute the judge's statements, except to say the record does not provide information regarding the prosecutor's past practices.

The judge noted that despite supporting the State's motions for leave to appeal in N.P. (A-0135-17) and D.S. (A-0138-17), she opposed the State's motion for leave to appeal in these cases. She explained that because the juveniles in those cases were charged with conduct that would be a crime if committed by an adult, the conflict between Rule 5:20-1(c), requiring the prosecutor's consent to diversion, and N.J.S.A. 2A:4A-73(a), which contained no such requirement, needed to be resolved. However, because all five juveniles in this case were charged with disorderly persons offenses, there was no conflict.
While we address the judge's rationale below, we point out that Rule 2:5-6(c) permits the judge to
comment on whether the motion for leave to appeal should be granted on the ground, among others, that a controlling question of law not theretofore addressed by an appellate court of this state is involved and that the grant of leave to appeal may materially advance the ultimate resolution of the matter.
[ (Emphasis added).]
The rule is designed to permit the trial judge to alert us to an issue that would benefit from our early intervention, not argue against our involvement. Any reasons for staying our hand would presumably be apparent from the statement of reasons supporting the order.

" 'Repetitive disorderly persons offense' means the second or more disorderly persons offense committed by a juvenile on at least two separate occasions and at different times." N.J.S.A. 2A:4A-22h.

For the balance of the opinion, we generally refer to the offenses listed in N.J.S.A. 2A:4A-71(b) as "non-divertible offenses."

N.J.S.A. 2A:4A-30(a) sets forth the requirements for filing a juvenile delinquency complaint, and subsection (b) does the same for filing a juvenile-family crisis petition by intake services.

In the second appeal regarding N.P. (A-0841-17), the judge did not provide a statement of reasons in her letter to the prosecutor. Since that complaint also charged the juvenile with disorderly persons offenses under Title 35 and Title 36, we assume the judge applied the same rationale in reaching her diversion decision.

Counsel for A.S. relied on his brief opposing the State's motion for leave to appeal and did not file a separate merits brief.

In this county, as in many, the prosecutor has already screened the complaint. Complaints charging non-divertible offenses must be forwarded for court action as required by Section 71, unless the prosecutor "otherwise consents" to diversion. The Court has recognized that in the juvenile realm, the prosecutor's charging decision has "added significance[,]" transforming the State's role "from investigative to accusatory." State ex rel. P.M.P., 200 N.J. 166, 177, 975 A.2d 441 (2009). We therefore reject any contention that the judge's unilateral entry of a diversion order, without notice to the State and an opportunity to be heard, is the "court action" envisioned by Section 71 or the Rule.

We respectfully refer further consideration of this issue to the Supreme Court's Committee on Practice in the Family Court.