**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0326-18T3
               A-0329-18T3
               A-0330-18T3

STATE OF NEW JERSEY IN
THE INTEREST OF C.F.

STATE OF NEW JERSEY IN
THE INTEREST OF A.G.

STATE OF NEW JERSEY IN
THE INTEREST OF T.S.

| APPROVED FOR PUBLICATION |
| :---: |
| **February 6, 2019** |
| **APPELLATE DIVISION** |

Argued December 17, 2018 – Decided February 6, 2019

Before Judges Messano, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Middlesex County,
Docket Nos. FJ-12-0124-19, FJ-12-1196-18, and FJ-
12-1197-18.

Christopher L.C. Kuberiet, First Assistant Prosecutor,
argued the cause for appellant State of New Jersey
(Andrew C. Carey, Middlesex County Prosecutor,
attorney; Joie D. Piderit, Assistant Prosecutor, of
counsel and on the briefs).

Respondents have not filed briefs.

Brian P. Keenan, Assistant Deputy Public Defender,
argued the cause for amicus curiae New Jersey Office

of Public Defender (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, on the brief).

Sarah C. Hunt, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Sarah C. Hunt, of counsel and on the brief).

Monica do Outeiro, Assistant Prosecutor, argued the cause for amicus curiae New Jersey Juvenile Prosecutor's Leadership Network (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Monica do Outeiro, on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

These three appeals, calendared back-to-back and consolidated for purposes of our opinion, require us to decide whether a Family Part judge may divert a delinquency complaint from court action without affording the juvenile offender the opportunity to appear at the hearing. Citing our decision in State in the Interest of N.P.,[1] a Family Part judge determined she only was required to notice the State of the hearing. In essence, the judge reasoned requiring juveniles to appear in court for conduct that would constitute disorderly persons offenses under chapter 35 and chapter 36 of Title 2C of the New Jersey statutes

---

[1] 453 N.J. Super. 480 (App. Div. 2018). The judge who diverted the complaints at issue in N.P. also diverted the complaints at issue here.

would frustrate the purposes of the Family Part's diversionary programs. We granted the State's motions for leave to appeal from the judge's three orders diverting separate complaints charging C.F., A.G., and T.S. with chapter 35 and chapter 36 offenses.

On appeal, the State contends the judge erred by: (1) failing to notice the juveniles of the diversionary hearings; and (2) diverting the complaints without the benefit of full assessments by court intake services evaluating the juveniles' personal and family circumstances.[2] We granted motions to appear as amici curiae by the Office of the Attorney General of New Jersey (Attorney General), the New Jersey Juvenile Prosecutor's Leadership Network (NJJPLN), and the New Jersey Office of the Public Defender (Public Defender). All amici join in the arguments advanced by the State, urging us to reverse the judge's orders and remand each matter for a hearing, after notice is provided to the parties and intake services conducts a full assessment of each juvenile's background. After reviewing the record in light of the contentions advanced on appeal, we reverse and remand for further proceedings.

---

[2] See N.J.S.A. 2A:4A-71(b).

A-0326-18T3

Because we conclude the judge erred in her narrow interpretation of our notice requirement set forth in N.P., we commence our review with a brief discussion of the relevant facts and legal principles we addressed in that opinion to give context to the judge's decisions in the present appeals.

In N.P., we granted the State's motions for leave to appeal from four Family Part orders, diverting the complaints of seven juvenile offenders. 453 N.J. Super. at 484. In sum, N.P. was arrested on two occasions and charged in separate complaints with a fourth-degree offense and chapter 35 and chapter 36 disorderly persons offenses; D.S. was charged in a complaint with a fourth-degree offense; and the remaining five juveniles were arrested together (five co-juveniles) following a motor vehicle stop and charged in separate complaints with chapter 35 and chapter 36 disorderly persons offenses. Id. at 485-88.

Each of the complaints charged a non-divertible offense, i.e., "a crime which, if committed by an adult, would be a crime of the first, second, third or fourth degree, or . . . a repetitive disorderly persons offense or any disorderly persons offense defined in chapter 35 or chapter 36 of Title 2C." N.J.S.A. 2A:4A-71(b) (Section 71). Absent the prosecutor's consent, intake services "shall" refer the non-divertible offenses set forth in Section 71 for court action.

Ibid.  Accordingly, intake services referred all seven complaints in N.P. for court action.  N.P., 453 N.J. Super. at 485-88.  Thereafter, the judge diverted the complaints to an Intake Services Conference (ISC)[3] or a Juvenile Conference Committee (JCC).[4]  Ibid.

Pertinent to this appeal, we cited the mandatory language of Section 71,[5] and determined "every complaint in th[o]se four appeals charged non-divertible offenses and the prosecutor did not 'otherwise consent[] to diversion,' [as such] each complaint should have been heard by the judge in open court."  Id. at 494 (second alteration in original).  Notably, following referral of the five co-juveniles' complaints for court action, "the judge held hearings as to each complaint on the record with the prosecutor, defense counsel and the juvenile present."  Id. at 488 (emphasis added).

---

[3]  See N.J.S.A. 2A:4A-74.

[4]  See N.J.S.A. 2A:4A-75.

[5]  We also recognized that unlike Section 71, Rule 5:20-1(c) does not require the prosecutor's consent for diversion of chapter 35 and chapter 36 offenses.  N.P., 453 N.J. Super. at 491.  Amended in 1988, Section 71 added chapter 35 and 36 offenses, but the Rule was never amended.  Ibid.  Although the omission may have been inadvert, we determined the plain language of Rule 5:20-1(c) does not prohibit the Family Part judge from diverting a juvenile complaint charging chapter 35 or chapter 36 offenses, over the prosecutor's objection.  Id. at 498.  As such, we affirmed the trial court's order diverting the complaints of the five co-juveniles, over the prosecutor's objection.  Ibid.

A-0326-18T3

However, "The judge did not follow th[at] procedure in the appeals involving N.P., and in the appeal involving D.S." Id. at 494. Accordingly, we reversed the judge's orders in those appeals and remanded the complaints pertaining to N.P. and D.S. for hearings. Id. at 497. We concluded it was "prudent to have the judge accord the State and defense counsel an opportunity to be heard before any further action [wa]s taken." Id. at 499 (emphasis added).

Notably, because our opinion in N.P. focused on the judge's exclusion of the prosecutor from the judge's decision to divert the complaints at issue, we "reject[ed] any contention that the judge's unilateral entry of a diversion order, without notice to the State and an opportunity to be heard, is the 'court action' envisioned by Section 71 or . . . Rule [5:20-1(c)]." Id. at 495 n.10.

II.

Against that backdrop, we glean the facts underlying the juveniles' arrests in the present matters from the allegations set forth in the complaints and the police reports.

State in the Interest of C.F.
(A-0326-18)

At 11:30 p.m. on May 18, 2018, Perth Amboy police approached a parked vehicle in a high crime area. When C.F. opened the driver-side door, officers "detected a strong odor of raw marijuana coming from inside of the vehicle."

6

After C.F. and the three other occupants were ordered out of the vehicle, police seized three baggies containing marijuana from the driver-side area, and two packages of cigars commonly used for inhaling marijuana in the center console. C.F. purportedly admitted ownership of the marijuana and paraphernalia. He was then arrested and charged with possession of less than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4), and possession of drug paraphernalia, N.J.S.A. 2C:36-2, both of which are disorderly persons offenses if committed by an adult.

State in the Interest of A.G.
(A-0329-18)

Just before midnight on August 25, 2016, North Plainfield police officers stopped A.G. and another juvenile, who said they were walking around trying to find a ride home to Dunellen. During the conversation, A.G. removed his hand from his pocket and attempted to toss a clear plastic baggie containing marijuana into a storm drain. A.G. was arrested and charged with possession of less than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4), a disorderly persons offense. On August 14, 2017, A.G.'s complaint was transferred from Somerset County to Middlesex County for further proceedings. See R. 5:19-1(a)(1) (requiring, absent good cause, "venue shall be laid in the county of the juvenile's domicile").

A-0326-18T3

At approximately 9:45 p.m. on March 19, 2018, T.S. was a passenger in a car pulled over for a traffic infraction by Lawrence police officers. After detecting an odor of marijuana, police searched T.S. and recovered two small baggies of marijuana from her rear pocket. T.S. was arrested and charged with possession of less than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4), a disorderly persons offense. On May 22, 2018, the complaint was transferred from Mercer County to Middlesex County for further proceedings. See R. 5:19-1(a)(1).

In June 2018, the prosecutor screened the complaints filed against C.F., A.G., and T.S., and referred their matters to the mandatory counsel calendar. Thereafter, consistent with the prosecutor's recommendations, intake services referred the complaints for court action. Although intake services' screening form lists the factors set forth in Section 71, the only factor marked on each form was the prosecutor's recommendation for court action.

Citing our opinion in N.P., the judge notified the State of her intention to divert the complaints charging all three juveniles. The judge afforded the State an opportunity to object within one week or the matters would be diverted. The judge did not, however, notify the juveniles of her intention.

Following the State's objection, the judge held a hearing on July 27, 2018 addressing all three matters. The prosecutor appeared at the hearing, and objected to the judge's determination that the juveniles were not required to be present at their hearings. Relying on N.P., the judge concluded we only required the State, and not the juveniles, the opportunity to be heard. According to the judge, "requir[ing] the juveniles to be [in court] would defeat the whole purpose of diver[sion] . . . [b]ecause . . . it would essentially expose them to the formal calendar."

Because the juveniles were not present at the hearing, the prosecutor did not provide the judge with the police reports, or any information contained in the reports, pertaining to the juveniles' arrests. The judge acknowledged her review was "only limited to the complaint on its face." Nor did the judge or prosecutor possess any information about the juveniles' personal and family circumstances. Nonetheless, over the State's objection, the judge diverted C.F.'s and A.G.'s complaints to an ISC, and T.S.'s complaint to a JCC.

After the State filed its motion for leave to appeal, the judge provided us with an amplification statement pursuant to Rule 2:5-6(c). The judge explained that "requiring the juveniles to appear would necessitate them [sic] obtaining counsel, thereby defeating the purpose of the diversionary programs[,] . . . which

[includes] . . . [']freeing the court to devote more of its time to serious and violent juvenile offenders.'" The judge noted that because "[a] juvenile's appearance at the ISC and the JCC is voluntary[,] . . . he or she can elect to have the matter heard in court" even after the matter is diverted.

Notably, the judge indicated the State did not offer any specific reasons for its objection to diversion in any of the three matters, but generally was opposed to diverting charges involving possession of less than fifty grams of marijuana. The judge recognized the State's concern that "the diversionary programs may not be equipped to handle the underlying problems that the juveniles may have, including substance abuse issues," but reiterated that the State did not proffer whether C.F., A.G., or T.S. had any such issues. The judge concluded, "If at any time during either an ISC or JCC, a determination is made that the juvenile's needs are greater than can be addressed through the services provided through the ISC or JCC, the matter can be referred back to the court."

## III.

### A.

As a matter of due process, juvenile offenders are afforded "[a]ll rights guaranteed to criminal defendants by the Constitution of the United States and the Constitution of this State, except the right to indictment, the right to trial by

A-0326-18T3

jury and the right to bail . . . ." N.J.S.A. 2A:4A-40; see, e.g., Matter of Commitment of N.N., 146 N.J. 112, 118 (1996) (recognizing "juveniles subject to involuntary commitment have significant liberty interests and are entitled to due process protections").

In the context of delinquency proceedings, the United States Supreme Court has recognized juveniles are entitled to representation by counsel pursuant to the Due Process Clause of the Fourteenth Amendment. In re Gault, 387 U.S. 1, 33-34, 41 (1967) (holding a juvenile and his parents are entitled to "timely notice, in advance of [a] hearing" and notification of the juvenile's right to counsel). In light of Gault, our Supreme Court reinforced the "traditional parens patriae role to protect children, but concluded that because juveniles can face loss of their physical liberty in juvenile proceedings, most of the protections afforded to adults facing similar losses of liberty should apply to juveniles." State ex. rel. P.M.P., 200 N.J. 166, 175-76 (2009).

Following Gault, our Legislature adopted the Code of Juvenile Justice, which provides juvenile offenders with "the right 'to be represented by counsel at every critical stage of the proceeding.'" Id. at 176 (quoting N.J.S.A. 2A:4A-39(a)); see also R. 5:3-4(a). For example, that right attaches when a child is charged with conduct, which if committed by an adult, would be a crime. Id. at

11

177.  "[B]ecause the juvenile does not have the right to indictment, the filing of the complaint by the Prosecutor's Office takes on added significance."  Ibid.

After a complaint is filed in a juvenile delinquency action, if probable cause is established and intake services recommends court action, "a summons shall issue to the juvenile and the juvenile's parents, guardians or custodian."  R. 5:20-2(a) (emphasis added).  Moreover, when considering whether to divert a complaint, the court is permitted to hold a hearing pursuant to N.J.S.A. 2A:4A-72(d) (Section 72).  Under those circumstances, "The court shall give notice of the hearing to the juvenile, his parents or guardian, the prosecutor, arresting police officer and complainant or victim.  Each party shall have the right to be heard on the matter."  Ibid. (emphasis added).

Accordingly, if a judge chooses to hold a diversionary hearing, Section 72 mandates notice to the parties and interested persons involved in the juvenile's matter.  Put another way, pursuant to the plain language of Section 72, the hearing is optional, but notice and the opportunity to be heard are not.  See Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014) ("There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose; therefore, we first look to the plain language of the statute."); see also State v. Clarity, 454 N.J. Super. 603, 607 (App. Div. 2018).

A-0326-18T3

Although Section 72 addresses permissive diversionary hearings, we see no reason why the notice requirements should not apply here, where a diversionary hearing is mandatory. See Matter of J.W.D., 149 N.J. 108, 115 (1997) ("[E]very effort should be made to harmonize the law relating to the same subject matter.").

We therefore conclude that requiring the court to notice juveniles to appear at their diversionary hearings is consistent with the rules governing delinquency actions and the statutory scheme. Thus, once the juveniles' complaints were referred for court action, that "action" necessitated notice to appear at their diversionary hearings. Because the judge conducted the hearings without their knowledge, C.F., A.G., and T.S. were not afforded an opportunity to appear and confer with counsel to determine whether they should object to, or advocate for, diversion. We agree with the Public Defender that, while diversion "avoid[s] the disabling stigma of an adjudication of delinquency[,]" the formal court process enables the juvenile to "assert his full panoply of . . . procedural and substantive rights or access court-supported treatment programs."

For example, it is unclear from the record why A.G.'s complaint was not transferred from Somerset County to Middlesex County until one year after his

13

arrest, and why another year transpired before the complaint was reviewed by the prosecutor. As the Public Defender argues, if A.G. had counsel during that timeframe, a speedy trial defense could have been considered. Indeed, diversion without affording counsel and the opportunity to be heard may preempt a juvenile's right to assert innocence or various defenses.

While it appears the judge's failure to afford the juveniles an opportunity to appear at the hearing was borne of her parens patriae role to protect them from the formalities of court proceedings for seemingly minor offenses, once intake services referred the complaints for court action, the juveniles had a right to appear and a right to representation at the hearing. Accordingly, although relying on N.P., the judge construed our holding too narrowly. The diversionary hearings constituted a critical stage in the proceedings against C.F., A.G., and T.S., triggering their rights to appear and be afforded counsel.

Moreover, notwithstanding the judge's well-intentioned attempt to spare the juveniles from the court process, the hearings should not have been conducted with only the prosecutor present. See R. 1:2-1 (requiring hearings "be conducted in open court unless otherwise provided by rule or statute"). We have recognized that "[c]ompliance with [the open-court requirement] is mandated by the 'due process requirements of the Fourteenth Amendment.'" In

14

re Dubov, 410 N.J. Super. 190, 201 (App. Div. 2009) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:2-1 (2019)). Indeed, pursuant to Canon 3 of the Code of Judicial Conduct, "A judge shall accord to every person who is legally interested in a proceeding, or to that person's lawyer, the right to be heard according to law or court rule." Code of Judicial Conduct, Pressler & Verniero, Current N.J. Court Rules, Appendix to Part 1, Canon 3, Rule 3.7 at 538 (2019). These principles are fundamental. In re Cayuse Corp. LLC, 445 N.J. Super. 80, 91 (App. Div. 2016).

B.

We next address the State's argument that the judge improperly diverted the juveniles' complaints in the absence of a complete assessment by intake services pursuant to the factors set forth in Section 71. The Attorney General argues the State also was adversely impacted by the lack of information presented to the court. Pursuant to Section 71, intake services was required to assess:

> (1) The seriousness of the alleged offense or conduct and the circumstances in which it occurred;
>
> (2) The age and maturity of the juvenile;
>
> (3) The risk that the juvenile presents as a substantial danger to others;

(4) The family circumstances, including any history of drugs, alcohol abuse or child abuse on the part of the juvenile, his parents or guardian;

(5) The nature and number of contacts with court intake services and the court that the juvenile or his family have had;

(6) The outcome of those contacts, including the services to which the juvenile or family have been referred and the results of those referrals;

(7) The availability of appropriate services outside referral to the court;

(8) Any recommendations expressed by the victim or complainant, or arresting officer, as to how the case should be resolved;

(9) Any recommendation expressed by the county prosecutor;

(10) The amenability of the juvenile to participation in a remedial education or counseling program [for certain offenses] . . . ; and

(11) Any information relevant to the offense in any case where the juvenile is charged with an act which if committed by an adult would constitute prostitution . . . or any offense which the juvenile alleges is related to the juvenile being a victim of human trafficking.

Here, the judge's discretionary decision to divert each complaint, over the prosecutor's objection, was informed only by the complaints, which contain generic biographical information about the juveniles and the nature of their

charges. All of the complaints against C.F., A.G, and T.S. included charges for possession of marijuana, but the record before the judge was insufficient to determine whether, and to what extent, they would benefit from drug treatment or other services.

Further, because C.F., A.G., and T.S. were not present at their hearings, the prosecutor could not furnish the court with the allegations contained in the police reports filed in their matters. In particular, in reviewing the minimal information contained in C.F.'s complaint, the judge inaccurately concluded C.F. was not driving a vehicle, "because there [we]re no motor vehicle tickets attached." According to the police report, however, when police approached the car, C.F. was in the driver's seat of the vehicle. As the NJJPLN recognizes, "C.F. was in possession of all he needed – a vehicle, marijuana and makeshift rolling papers – to engage in serious, dangerous behavior (driving while intoxicated[)]. . . ."

Moreover, without the benefit of a full assessment by intake services, the prosecutor was hamstrung by the inability to present the judge with a full picture of the juveniles and their families, including present and prior drug and alcohol abuse and treatment. See N.J.S.A. 2A:4A-71(b). As such, the judge's finding that the State failed to present specific reasons for its objections to diversion is

A-0326-18T3

flawed. So, too, was the judge's determination that the ISC and JCC could have referred the juveniles back to court if the diversionary conferences were unable to address the juveniles' needs. Any substance abuse issues should have been considered prior to diversion.

Having reviewed the judge's legal conclusions de novo, see Nicholas v. Mynster, 213 N.J. 463, 478 (2013), we reverse and vacate the orders entered in A-0326-18, A-0329-18, and A-0330-18 and remand to the Family Part to: (1) return the complaints to court intake services, which shall conduct a complete review of relevant factors pursuant to Section 71 within twenty-one days; and (2) schedule a hearing with notice to the prosecutor, C.F., A.G., and T.S., and their parents, guardians or custodians, within ten days of receipt of intake services' review.

On remand, the matters should be assigned to a different Family Part judge. See Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) ("In an abundance of caution, we direct that this matter be remanded to a different judge for the plenary hearing to avoid the appearance of bias or prejudice based upon the judge's prior involvement with the matter . . . .").

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0326-18T3